**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| RAY LYNN BUTTERFIELD,<br><br>          Plaintiff,<br><br>     v.<br><br>RICHARD GARDEN et al.,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-CV-653 TS<br><br>District Judge Ted Stewart |

Plaintiff, Ray Lynn Butterfied, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.  *See* 42 U.S.C.A. § 1983 (West 2009).  Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915(b).  *See* 28 *id.* § 1915.  This case is before the Court on Defendants' motion for summary judgment.

**ANALYSIS**

**I. Background**

Plaintiff's Complaint asserts one claim of cruel and unusual punishment under the Eighth Amendment based on denial of adequate medical care.  Plaintiff alleges that he "has three herniated discs in his neck that cause severe pain which radiates down [his] arm causing numbness."  (Compl. ¶ 6.)  Plaintiff further alleges that he "has had 3 MRI's at the University of Utah and it

has been recommended that [he] have surgery but Defendant[s] Garden and Roberts refuse to approve the surgery and refuse to provide plaintiff with pain medication." *Id*.   Plaintiff's Complaint seeks compensatory and punitive damages, attorneys fees, and costs.

Plaintiff's Complaint was served upon Defendants in August of 2008.  Defendants were later directed to prepare a *Martinez* Report addressing Plaintiff's claim.[1]  The *Martinez* Report was filed on November 6, 2008, and includes nearly one thousand pages of medical records from both the prison and the University of Utah Medical Center as well as the sworn affidavits of Defendants Garden and Roberts who supervised Plaintiff's care.  Plaintiff has never formally responded to the *Martinez* Report nor has he provided any evidence contradicting it.  However, in a letter to the Court dated November 12, 2008, Plaintiff stated that he had reviewed the report and found "most of it" to be true.  (Doc. no. 46.)  Plaintiff has also never filed a formal response to Defendants' motion for summary judgment.

---

[1] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering prison administrators to prepare a report to be included with the pleadings in cases where a prisoner alleges a constitutional violation by prison officials.

## II. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Cellotex v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." Cellotex v. Catrett, 477 U.S. 317, 325 (1986). This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. Johnson v. City of Bountiful, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing

3

sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, 144 F.3d 664, 671 (10th Cir. 1998)*. The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling, 968 F.2d 1022, 1024 (10th Cir. 1992)*. Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999)*.

### III. Factual Record

The material facts summarized here are drawn from Defendants' *Martinez* Report and are essentially undisputed. On May 31, 2005, Plaintiff fell in the shower and hit is head sustaining a one inch laceration on his scalp. Plaintiff was sent to the infirmary where the laceration was stapled by Dr. Kennon Tubbs, M.D.. Plaintiff was also prescribed Darvocet for

pain.  On June 3, 2005, Defendant Roberts, a physician at the
Utah State Prison (USP), examined Plaintiff in response to
complaints about neck and shoulder pain.  Roberts noted no
neurological deficits at that time.  On June 10, 2005, Roberts
again examined Plaintiff and referred him to an outside
consultant for evaluation of neck, shoulder, and joint pain.  On
June 22, 2005, Plaintiff was seen by Jim Armstrong, a physical
therapist, regarding shoulder pain and loss of active range of
motion (ROM).  Plaintiff received x-rays which showed some
degenerative disc changes.  Plaintiff was instructed on how to do
ROM exercises for his neck and shoulder.  During August of 2005
Plaintiff continued to complain of neck and shoulder pain and
received physical therapy and TENS Unit treatments, he was also
referred to the University of Utah Medical Center (UUMC) for a
cervical spine (C-spine) MRI.

On September 2, 2005, Dr. Roberts reviewed Plaintiff's MRI
results which showed some degenerative disc disease (DDD) and
mild narrowing but no nerve impingement or disc protrusion.  The
UUMC consultants made no recommendation for followup treatment or
medications.  The MRI results were shared with Plaintiff on
September 7, 2005, by Dr. Tubbs who informed Plaintiff that the
recommended course of treatment was continued physical therapy
and stretching exercises.  Tubbs also explained that the damage

5

shown by the MRI was not severe enough to require surgical intervention.

In October of 2005 Plaintiff was referred to UUMC for EMG/NCS testing which showed foraminal stenosis at C-5/6 and C-6/7.  Plaintiff was prescribed Predisone and stronger pain medications and was referred for a repeat C-spine MRI.  EMG results also showed evidence of mild slowing of the ulnar nerve across the left elbow for which conservative treatment with elbow splints was deemed appropriate.  On November 16, 2005, the results of Plaintiff's second C-spine MRI came back showing DDD, small disc bulges and severe facet arthritis with resultant moderate bilateral neuroforamina stenosis.  The following week Plaintiff received additional treatment at the UUMC Neurosurgery Clinic.  On January 31, 2006, Plaintiff was issued his own TENS Unit for ongoing treatment.

On May 8, 2007, Plaintiff underwent a third C-spine MRI at UUMC which showed some slight worsening of Plaintiff's condition, however, no additional treatment was recommended.  Plaintiff continued to receive physical therapy, anti-inflammatory medications and pain medications.  On June 5, 2008, Plaintiff received a fourth C-spine MRI which showed no change since the previous MRI in 2007.  Based on the 2008 MRI the UUMC clinic recommended continuation of Plaintiff's physical therapy and pain

management regimen but did not recommend surgery or other follow-up tests.

### IV. Summary Judgment Analysis

#### A. Legal Standard for Denial of Medical Care Claims

In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent

7

failure to provide adequate medical care," *Riddle v. Mondragon,*
*83 F.3d 1197, 1203 (10th Cir. 1996)*, are insufficient to state a
claim under the Eighth Amendment.

### B. Insufficiency of Plaintiff's Evidence

Defendants' motion for summary judgment asserts that the
evidence in this case shows Plaintiff was not denied adequate
medical care and that Defendants were not deliberately
indifferent to Plaintiff's medical needs.  Defendants' motion is
supported by their *Martinez* Report which includes Plaintiff's
extensive medical records and the sworn affidavits of Defendants
Garden and Roberts.  The Court has thoroughly reviewed these
documents which show that Plaintiff has received extensive
treatment for his various ailments, including countless doctor
visits, regular outside consultations, multiple MRI's and other
diagnostic procedures, and continuous physical therapy and pain
management treatments.  Indeed, the record in this case shows
that Plaintiff's medical treatment has been at least on par with
what an insured patient might receive in the private sector.
Based on this evidence the Court concludes that Defendants have
met their initial burden on summary judgment of showing that
there is an absence of evidence to support Plaintiff's claim of
cruel and unusual punishment.  Thus, the burden rests squarely
with Plaintiff to come forward with admissible evidence showing

there is a genuine issue of material fact which precludes summary judgment for Defendants.

Plaintiff has not met his burden of proof in this case.  Not only has Plaintiff failed to produce any evidence to support his allegations that he was denied recommended surgery or pain medications he has also failed to show that Defendants were deliberately indifferent to his medical needs.  In fact, the extensive medical records in this case show that Defendants have been quite solicitous of Plaintiff's medical needs.  In its Order entered August 4, 2008, the Court explicitly warned Plaintiff that if Defendants moved for summary judgment Plaintiff could not rest upon the mere allegations in his Complaint and, instead, must come forward with admissible evidence showing a genuine issue remaining for trial.  By failing to respond to the *Martinez* Report or to Defendants' summary judgment motion Plaintiff has essentially conceded that his present claims must fail and that summary judgment for Defendants is appropriate.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 48) is **GRANTED**.

DATED this 10th day of September, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge